# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| James E. Jolley, Jr., | ) |
| Petitioner, | ) CV 06-132 TUC-FRZ (JM) ) |
| v. | ) **REPORT AND** ) **RECOMMENDATION** |
| Greg Fizer, et al., | ) ) |
| Respondents. | ) ) |

Pending before the Court is Petitioner James E. Jolley, Jr.'s Petition for Writ of Habeas Corpus [Docket No. 1]. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Trial and Direct Appeal**

The facts underlying this petition were recited in the Arizona Court of Appeals' February 14, 2002, Memorandum Decision affirming Petitioner's conviction and are as follows:

> [Petitioner] was the manager and maintenance worker at a motel and . . . he lived . . . with G[lenda], G[lenda]'s mother, Lisa, and Lisa's other daughter. The couple had agreed that Lisa would work outside the home and that appellant would manage the motel and take care of the children. On the date of the offense, after appellant had driven Lisa to work, he returned to the motel and allowed the children to play outside with his nieces who also lived at the motel. At one point a niece brought G[lenda]

> into appellant's office/trailer to change her diaper because she had had diarrhea. [Petitioner] spanked G[lenda], scolded her, and made her stay in a corner to think about what she had done. Later, [Petitioner's] sister went to the trailer/office to ask if G[lenda] could play with the other children again. [Petitioner] responded she had to stay inside.
>
> Thereafter, [Petitioner] came out of the trailer carrying G[lenda], who was unconscious. One of his nieces called 911, and an ambulance arrived after a few minutes. Ed Lourenko, a handyman and friend of [Petitioner's] father, testified at trail that he had been at the motel that day to discuss some repair work and had been talking with [Petitioner] on the porch of the trailer when they heard a bang in the office. Lourenko said he thought a filing cabinet . . . had fallen over. But when [Petitioner] carried the child out, he had stated "she got heatstroke" and Lourenko surmised that was the case because G[lenda] appeared flushed and red in the face.

(Petitioner's Ex. 1.) Glenda was taken to the hospital where it was determined that she had sustained retinal hemorrhaging and subdural hematomas. (*Id.*)

Petitioner was charged pursuant to A.R.S. § 13-3623(B)(1) with child abuse of a person under fifteen years of age. *Petition*, p. 1. Petitioner's claims relate largely to two particular witnesses that testified during his trial. As to the first, Ed Lourenko, the trial court summarized that his testimony "was to the effect that the victim was injured by an accident involving a file cabinet, in which the [Petitioner] was in no way involved," which was "consistent with the theory of the defense as testified to by all witnesses– the victim was injured accidentally." (Respondents' Exhibit D.)

The second witness important to the evaluation of Petitioner's claims is Andreas Theodorou, M.D. Dr. Theodorou is the pediatric intensive care physician who treated Glenda and also served as the State's expert at Petitioner's trial. (Respondents' Exhibit C (transcript of Dr. Theodorou's testimony), p. 18.) Dr. Theodorou testified that, on May 6, 1999, he saw Glenda in the pediatric intensive care unit and requested a consult from Joe Miller, M.D., a pediatric ophthalmologist. (*Id.*, pp. 20-21.) Dr. Miller diagnosed Glenda with bilateral retinal hemorrhages. (*Id.*, p. 22.) Dr. Theodorou concluded that she was showing signs of brain herniation, which he described as a life threatening condition, and elected to perform surgery to evacuate the hematoma. (*Id.*, p. 23-24.) The surgery was

performed by Dr. Weinhard. (*Id.*, pp. 24-26.) Dr. Theodorou was asked if injuries such as those sustained in Glenda's case could have resulted from a fall from a 29 inch tall filing cabinet or desk, and he indicated that they could not even if there were metal tools on the floor. (*Id.*, p. 33.)      At the conclusion of trial, the jury found Petitioner guilty of child abuse and was sentenced to a mitigated prison term of ten years. (Petitioner's Exhibit 1.) Petitioner appealed his conviction to the Arizona Court of Appeals, raising two claims. (*Id.*) First, he challenged the prosecutor's reference at trial to the "mug shot" police took of him in this case, claiming that the mug shot suggested he had a prior criminal record. (*Id.*) The court of appeals found the claim forfeited as to all but fundamental error and concluded that, because the photograph was not admitted and was used only to refresh the memory of a witness as to how Petitioner looked on the day of the underlying events, the jury was not negatively affected by Petitioner's appearance in the photograph. (*Id.*) Petitioner's second claim on appeal was that the evidence presented at trial was insufficient to support the child abuse conviction. (*Id.*) The court reviewed the evidence and concluded that "there was sufficient circumstantial evidence to support the finding of guilt beyond a reasonable doubt . . . ." (*Id.*) Petitioner then sought review by the Arizona Supreme Court which, by order dated August 13, 2002, denied review without comment. (Petitioner's Exhibit 2.)

### B.    Petition for Post-Conviction Relief

Petitioner sought post-conviction relief in the Pima County Superior Court. (Respondents' Exhibit A.) His first claim was that, contrary to assertions by the prosecutor, witness Ed Lourenko was not a witness who came forward after the fact and was therefor not credible, but was disclosed at the beginning of the case. He contended that the prosecutor erroneously stated at trial that Lourenko had first come forward as a potential witness in August 1999, rather than at the time of Glenda's injury three months earlier. (*Id.*) Petitioner claimed that this information constituted either "newly discovered evidence or is a result of ineffective assistance of counsel," because his lawyer did not challenge the prosecutor's erroneous statement. (*Id.*)   In support of this claim, Petitioner cited a motion to modify the

conditions of his pretrial release, which was filed in June 1999, that identified Lourenko as able to testify that Petitioner was not responsible for Glenda's injury. (*Id*.; Respondents' Exhibit B.) Additionally, Petitioner claimed that his trial counsel was ineffective in failing to request a jury instruction "concerning the defense of good character," failing to prepare defense witnesses by showing them crime scene photographs before they testified, and by ordering potential witnesses "to make themselves scarce." (Respondents' Exhibit A.)

By order dated December 17, 2003, the trial court dismissed the petition. (Respondents' Exhibit D.) With regard to the failure to challenge the prosecution's assertion that Lourenko's disclosure was delayed, the court found that "Dr. Theodoro's [sic] testimony was so compelling that the jury would have accepted it regardless of when Mr. Lourenko came forward." (*Id*.) The court then concluded that a good character instruction would not, given Dr. Theodorou's testimony, have changed the outcome. (*Id*.) Petitioner then sought review of the decision in the Arizona Court of Appeals. (Petitioner's Exhibit 5.) By Decision Order filed November 29, 2004, the Court of Appeals granted review, but denied relief. (*Id*.) The court stated that it found no abuse of discretion in the trial court's denial of the petition. (*Id*.) On June 6, 2005, the Arizona Supreme Court denied review without comment. (Petitioner's Exhibit 6.)

### C. The Pending 2254 Petition

Petitioner subsequently filed the instant habeas petition, which alleges the following bases for relief:

> **Ground I:** Right to effective assistance of counsel under the Sixth Amendment to the United States Constitution.
>
> No evidence was presented to the grand jury that connected the petitioner to the injuries suffered by the child. His attorney, Michael Mussman, nevertheless failed to file a motion for a new finding of probable cause under Rule 12.9 of the Arizona Rules of Criminal Procedure.
>
> Trial counsel failed to prepare for trial by preparing witnesses, failed to effectively cross examine the state's expert witness, failed to present witnesses to rebut the state's expert, failed to present a good character defense, failed to alert the trial court that the state's argument regarding a witness was fabricated.

4

>**Ground II:** Due Process Clause of the 5th and 14th Amendments violated by prosecutorial misconduct.
>
>The prosecutor, at trial, sought to introduce mug shots of the petitioner. The prosecutor argued that a defense witness - Edward Lourenko - was a witness essentially created by the defense that was disclosed late in the prosecution. In fact, Edward Lourenko was present at the time the child was injured and was disclosed to the court and the prosecutor at the inception of the case.
>
>**Ground III:** 5th and 14th Amendments Due Process Rights were violated by trial court's denial of a motion for judgment of acquittal.
>
>There was no substantial evidence sufficient to go to the jury that petitioner caused injuries suffered by the child.
>
>No one saw the petitioner strike the child and the petitioner and eye witness testified the injuries were caused by the child falling inside of a trailer while the petitioner was outside of the trailer.

*Petition*, pp. 5-7.

## II.   LEGAL DISCUSSION

### A.   Portions of Petitioner's Claims Are Not Exhausted

A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999). Exhaustion occurs either when a claim has been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999). A claim has been "fairly presented" if the petitioner has described the operative facts and legal theories on which the claim is based. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995). The operative facts must be presented in the appropriate context to satisfy the exhaustion requirement. The fair presentation requirement is not satisfied, for example,

when a claim is presented in state court in a procedural context in which its merits will not be considered in the absence of special circumstances. *Castille*, 489 U.S. at 351. An exact correlation of the claims in both state and federal court is not required. *Rice,* 44 F.3d at 1403. The substance of the federal claim must have been fairly presented to the state courts. *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir. 1994) (citations omitted).

A petitioner may also exhaust his claims by either showing that a state court found his claims defaulted on procedural grounds or, if he never presented his claims in any forum, that no state remedies remain available to him. *See Jackson v. Cupp*, 693 F.2d 867, 869 (9th Cir. 1982). "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals. *See Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999).

In this case, Respondents contend that parts of Petitioner's claims are not exhausted. Specifically, Respondents assert that Petitioner did not exhaust his claims that trial counsel was ineffective in failing to seek a second grand jury probable cause determination, for failing to interview witnesses, and in failing to sufficiently research and challenge the State's evidence on the possible causes of Glenda's injuries. In reply, Petitioner admits that these claims were raised for the first time in this action, but explains this was done to illustrate the "litany of failures on the part of defense counsel during the pretrial proceedings and trial proceedings in this case." *Reply*, p. 3.

The problem is that the facts offered by Petitioner are the sort of "operative facts" that are required to be submitted to the state courts before a claim can be considered "fairly presented." *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995). As Petitioner recognizes, the Arizona courts have not had the opportunity to evaluate his claims in light of these newly alleged facts. As such, there is no record this Court can use to evaluate the claims or how they were treated by the State courts.

1  To the extent his claims relate to these facts, they have not been exhausted.

2        Moreover, as Respondents contend and Petitioner does not contradict, Petitioner is
3  procedurally barred from now raising these claims in State court.  *See* Ariz.R.Crim.P.
4  32.2(a)(3) ("A defendant shall be precluded from relief under [Rule 32] based upon any
5  ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral
6  proceeding.")  Because Petitioner did not present any of these claims to the Arizona courts,
7  the claims are procedurally defaulted and barred from federal review.  Ariz.R.Crim.P. 32.1,
8  32.2(a) & (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  As such, the merits of the
9  claims need not be addressed unless Petitioner establishes cause and prejudice or that a
10 fundamental miscarriage of justice has occurred.  Petitioner has not attempted to do so, and
11 the Court recommends that each of Petitioner's non-exhausted claims be denied.

12     **B.**    **Merits**

13       Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any
14 claim that was adjudicated on the merits in State court proceedings" unless the state decision
15 was (1) contrary to, or an unreasonable application of, clearly established federal law as
16 determined by the United States Supreme Court; or (2) based on an unreasonable
17 determination of the facts in light of the evidence presented in the State court proceeding.
18 28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120 S.Ct. 1495 (2000).  A state court's decision
19 can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority,
20 or (2) if it applies the controlling authority to a case involving facts "materially
21 indistinguishable" from those in a controlling case, but nonetheless reaches a different result.
22 *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state
23 court decision is contrary to federal law, the court must examine the last reasoned decision
24 of a state court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092,
25 1101 (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal
26 law either (1) if it correctly identifies the governing legal principle but applies it to a new set
27 of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a
28

clearly established legal principle to a new context in a way that is objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

### 1. Ineffective Assistance of Counsel

Petitioner asserts that his counsel was ineffective for failing to challenge the prosecutor's assertion that Lourenko was not timely disclosed and also for failing to request a good character instruction. The operative legal standard applicable to these claims is a familiar one, addressed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The standards enunciated there by the Court are applied unless there is other Supreme Court precedent directly on point. *See Wright v. Van Patten*, 128 S.Ct. 743, 746 (2008). Under *Strickland*, a petitioner must show both deficient performance and prejudice in order to establish that counsel's representation was ineffective. 466 U.S. at 687. In the context of habeas claims evaluated under § 2254(d)(1) standards, the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Applying these standards, the Court concludes that the Arizona court's decision denying Petitioner relief did not violate clearly established federal law. The last reasoned decisions on these claims are from the trial court and the Arizona Court of Appeals and are identical in their reasoning. In its denial of Petitioner's Rule 32 petition, the trial court stated that:

> To the Court, Dr. Theodoro's testimony was so compelling that the jury would have accepted it regardless of when Mr. Lourenko came forward. The defense asserted accidental injury, and this was discredited by the medical evidence.

(Respondent's Exhibit D.) The trial court then concluded that the *Strickland* prejudice standard had not been satisfied because there was no "showing of some likelihood of a different verdict." (*Id.*) *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had not effect on the judgement"). On appeal, the outcome was the

same. The Arizona Court of Appeals found no abuse of discretion and concluded that Petitioner could not establish prejudice. (Petitioner's Exhibit 5.)

As a threshold matter, it was permissible for the Arizona courts to bypass the evaluation of the first prong of the *Strickland* analysis and proceed directly to an analysis of the prejudice which may have resulted. 466 U.S. at 694. Moreover, the courts' analyses and decisions were not unreasonable. Dr. Theodorou was asked if injuries such as those sustained in Glenda's case could have resulted from, as Petitioner contended, a fall from a 29 inch tall filing cabinet or desk, and he indicated that they could not even if there were metal tools on the floor. (Respondent's Exhibit C, p. 33.) As the trial court determined, this testimony discredited Petitioner's claims of accidental injury. This would have been the case regardless of the timing of the disclosure of Lourenko.

Thus, to prevail on this claim, Petitioner would need to show that Dr. Theodorou's opinions could not or should not have carried such weight. In an effort to do so, Petitioner asserts that his counsel failed to effectively cross examine Dr. Theodorou and asserts that his testimony "could have easily been impeached through medical literature and defense experts. *Petition*, p. 9. This could have been easily accomplished, Petitioner contends, by relying on a story from a newsmagazine, 48 Hours– "A Mother Accused," and the case of *Smith v. Mitchell,* 437 F.3d 884 (9th Cri. 2006), *judgement vacated by Patrick v. Smith*, 127 S.Ct. 2126 (2007). First, as discussed above, Petitioner did not present this part of his claim in the State courts. Second, there has been no opportunity for a fact-finder to evaluate the potential factual differences between the incidents addressed in the 48 Hours episode and in the *Smith* case with the facts involved in the incident here. Third, Petitioner has not presented any expert opinion incorporating the facts of this case to support of the assertion that Glenda's death was accidental. Where a petitioner seeking relief on his ineffective assistance of counsel claim cannot demonstrate prejudice even if his allegations are proved, he is not entitled to relief. *Williams v. Calderon,* 52 F.3d 1465, 1484 (9th Cir.1995). As such, the Court does not find the State courts' determinations on this issue unreasonable.

### 2. Prosecutorial Misconduct

Petitioner asserts that he is entitled to habeas relief because the prosecutor at his trial attempted to have his mug shot admitted into evidence after it was used to refresh the recollection of a witness who had trouble identifying him at trial. The circumstances relating to the use of the photograph were summarized by the Court of Appeals:

> During trial, a paramedic who had responded to the emergency telephone call regarding the two-year-old victim, G[lenda], testified that she had spoken to a man at the scene who had identified himself as the victim's "dad." She could not identify [Petitioner], however, as the person with whom she had spoken. But on Cross-examination, she said she did recognize him, explaining she had not at first because he had "cleaned up." Previously he had looked "scraggly," with bushy hair and beard. To show what [Petitioner] had looked like at the time, the prosecutor asked to introduce his "mug shot." [Petitioner] did not immediately object. But when the state actually asked the court to mark the photograph for identification to introduce it, [Petitioner] objected, without stating a ground.

(Petitioner's Exhibit 1.) Petitioner's counsel later clarified that the objection was based primarily on the fact that the photograph was "less than flattering." (*Id.*)

The clearly established constitutional standard governing prosecutorial misconduct claims is whether the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainright*, 477 U.S. 168, 181 (1986). The Court, in evaluating whether a petitioner's due process rights were violated, "must consider the probable effect of the prosecutor's [conduct] on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). As with claims of ineffective assistance of counsel, a successful petitioner must establish the misconduct resulted in actual prejudice. *Johnson v. Sublett*, 63 F.3d 926, 930 (1995). The Ninth Circuit has explained that prosecutorial misconduct violates due process only when it has a substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

At trial, Petitioner did not, as he does here, object to the photograph because it suggested he had a prior criminal history. (*Id.*) Accordingly, the Arizona Court of Appeals

reviewed the claim only for fundamental error and concluded:

> The mere mentioning of a mug shot is not fundamental error *per se*. *State v. Verive*, 128 Ariz. 570, 627 P.2d 721 (App. 1981). Although reference to a "mug shot" can be reversible error if made in a context that would imply the defendant had a prior criminal record, the error is not reversible it is at least implicit that the photograph was taken in the case for which the defendant is being prosecuted. *State v. Dixon*, 127 Ariz. 554, 622 P.2d 501 (App. 1980); *see also State v. Spain*, 27 Ariz. App. 752, 558 P.2d 947 (1976). Where the reference is clearly to another criminal matter, the error can be reversible and fundamental, which means it is not waived by the defendant's failure to object. *State v. Jacobs*, 94 Ariz. 211, 382 P.2d 683 (1963). Here, it was clear the photograph was taken in connection with his matter because the prosecutor was trying to use the photograph to refresh the memory of the witness as to how [Petitioner] looked when he committed the instant offense. Therefore, any impropriety in the prosecutor's unobjected reference to a "mug shot" did not result in fundamental error.

(*Id.*)

In response to Petitioner's assertion of error in relation to the use of the mug shot, Respondents point out that Petitioner "does not even attempt to . . . rebut the state courts' factual determination that the prosecutor's reference to his mug in this case did not imply a prior criminal record . . . ." *Response*, pp. 10-11. Respondents assertion is correct. Moreover, Petitioner, in his reply, did not challenge the Respondents' assertion and again did not offer any challenge to the state court's factual rendition.

The only pertinent authority Petitioner offers in support of his position is *Barnes v. United States*, 365 F.2d 509 (6th Cir. 1966), where the court determined it was error that the mug shot of the defendant was introduced because it evidenced the defendant's prior criminal record. The Court agrees with Petitioner that if this were the case he would have been prejudiced. However, as the state trial and appellate courts noted, the mug shot at issue here was related to the offense for which Petitioner was tried. In fact, it was used to refresh the memory of a witness as to how the Petitioner looked at the time Glenda was injured. The photograph was used for a proper purpose and did not imply a prior record. Accordingly, the state court's decision on this claim was not "contrary to, or involve an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1).

11

### 3. Sufficiency of the evidence

The Arizona standard for evaluating the sufficiency of the evidence to support a conviction has been held by the Arizona courts to be identical to the federal standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See State v. Gallegos*, 178 Ariz. 1, 9 (1994), *citing State v. Atwood*, 171 Ariz. 576, 596 (1992). Under the *Jackson* and Arizona standards, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In reaching its conclusion, the reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995); *see also Jackson*, 443 U.S. at 319, 324, 326. Moreover, the AEDPA requires great deference to the state court's resolution of the claim and to merit habeas relief "the state court's application of the *Jackson* standard must be 'objectively unreasonable.'" *Juan H. v. Allen*, 408 F.3d 1262, 1275 n. 13 (9th Cir. 2005), *cert. denied*, 546 U.S. 1137 (2006).

Here, the record reflects that the Arizona Court of Appeals evaluated the sufficiency of the evidence under the *Jackson* standard, viewing the evidence "in the light most favorable to upholding [Petitioner's] convictions." (Petitioner's Ex. 1.) In rejecting the claim, the court evaluated the evidence, including the testimony of Ed Lourenko. The court noted that the head injuries sustained by Glenda were "non-accidental," and that Petitioner "essentially admitted below that he had not left the trailer." It was undisputed that Glenda was in his care the entire time and that "no one else had had access to her." (*Id.*, ¶ 9.) Accordingly, the court concluded that, "[b]ecause reasonable jurors could find from this evidence that G[lenda] had been in [Petitioner's] care during the relevant period of time and that during this time she had sustained serious head injuries that were non-accidental, there was sufficient circumstantial evidence to support the finding of guilt beyond a reasonable doubt . . . . (*Id.*)

Petitioner attacks the state court's decision by pointing out that "[n]o one saw the Petitioner strike the child and the Petitioner and eye witness testified that the injuries were caused by the child falling inside a trailer while the Petitioner was outside of the trailer." *Petition*, p. 13. As discussed above, however, Dr. Theodorou's testimony was that the injuries were not accidental. As such, that testimony was at odds with that of Ed Lourenko. It was, of course, within the province of the jury to determine the credibility of witnesses, and resolve this evidentiary conflict. *Walters*, 45 F.3d at 1358. This Court and the state courts were obliged to assume that the jury resolved all conflicts in a manner that supports the verdict. *Id.* It is apparent that the jury chose to rely on the Dr. Theodorou's testimony, which, combined with the circumstances surrounding Glenda's injury, led them to find Petitioner guilty. Accordingly, the Court finds that a rational juror could have found beyond a reasonable doubt that Petitioner was in fact guilty and that the State court's rejection of Petitioner's insufficiency of the evidence claim was not objectively unreasonable.

## III. RECOMMENDATION

For all of the above reasons, **THE MAGISTRATE JUDGE RECOMMENDS** that the District Court, after its independent review, **DISMISS WITH PREJUDICE** Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b) and 6(a) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 06-132-TUC-FRZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.

*See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 28th day of April, 2009.

*Jacqueline Marshall*
Jacqueline Marshall
United States Magistrate Judge